Mr. Hoppe. Good morning. May it please the court. I'm Matthew Hoppe on behalf of the defendant and appellant Lisette Lopez. This is a denaturalization case that arises in a posture that doesn't come up all that often. The court's cases certainly aren't extensive on the measures that a district court judge can use to determine whether a conviction subjects somebody to denaturalization. But the court's cases in other areas, including the Armed Career Criminal Act, are quite clear about how district courts can use prior judgments and the documents from the prior judgments to expand the penalties for a criminal conviction. Ms. Lopez was convicted of conspiracy to commit money laundering. And about a decade later, the government brought these denaturalization proceedings. The primary error, and there are several, but let me let me ask you, if we decide that we should follow the modified categorical approach, it seems to me that the elements of at least one of the underlying substantive offenses to which your client pleaded guilty involves moral turpitude. And that is, as I understand it, she pleaded both, well, to two different underlying substantive offenses, and one of which is 1956A1B1. And that, it seems to me, if the modified categorical approach applies, would involve moral turpitude. Yeah. We didn't focus as heavily on our brief because the district court didn't get to that point, I don't believe. But I would agree there are portions of the money laundering statute that would categorically involve moral turpitude, including A1B. There are also portions that... But she pleaded to both. She pleaded to two. Well, the judgment says 1956H, just conspiracy. So, but there has to be an underlying basis for under 1956. So, assuming that the modified categorical approach applies and the district court had done the steps required by the Supreme Court, it's possible the district court would have said that this conviction categorically involves moral turpitude, or not that it Yeah, I don't... I'm having trouble understanding why the court can't look to the Shepard documents to establish the date of a crime. That's where I wanted to go with the argument. I certainly think the court could look to the Shepard documents to establish the date of the crime. That's what the court said in Dudley and all the cases that preceded Dudley. The problem here is that the Shepard documents don't establish the date of the crime. And the district court said that in its decision, that the factual proffer never admitted the date that she had joined her conspiracy. Now, if this were a case... Is the date of the crime an element of the crime? Is that really even something that you would look to the Shepard documents to find in applying the modified categorical approach? The date of commission is not an element of the crime, but it also wasn't an element in Dudley either. And the courts have said you can... Prosecutors and defendants can agree to all kinds of other facts and put them into the Shepard documents that aren't elements. Date of commission is almost... It's quite rarely an element, but the court uses the Armed Career Criminal Act to expand sentences for multiple crimes that occurred on multiple dates all the time, but it has to be found in the Shepard documents. Yeah, what I meant to say is I don't understand why you can't look beyond the Shepard documents. For the date of the crime. The reason is, I think, Dudley... And we work backwards. The Dudley decision says it has to be found in the Shepard documents because Apprendi says any judicial fact that would expand the consequences of a criminal conviction must be submitted to the jury as required by the Sixth Amendment. And the cases that precede Dudley... That's for determining the fact of a prior conviction, isn't it? It's for... No. Apprendi says the fact of the prior conviction, the court can take notice of that, but any other fact aside from the fact of a prior conviction in Apprendi has to be submitted to the jury. That was the reason. That's the genesis of the categorical approach from the very start. But doesn't your argument depend on denaturalization being a penalty as opposed to some other type of consequence? Not necessarily. The Supreme Court's decisions... And this is outlined further in our reply brief than in our opening brief. The Supreme Court's decisions on deportation, for example, have been pretty consistent that deportation is not a penalty or a punishment. If it were, then rights like the right to appointed counsel and things would attach, and they don't. But the Supreme Court has said that deportation is such an important consequence in the Padilla versus Kentucky case. They said that these rights still may attach, including in Padilla the right to be advised that your conviction will lead to your deportation. Because even if it's not a penalty, as we use that term in criminal cases, it is still a consequence that one needs to know about. Wasn't she advised in her plea agreement that her plea could result in immigration for that rule, that even if the immigration consequence is not technically a penalty, it doesn't have to be for the categorical approach to apply? The plea agreement looks like it contained an explicit warning that, quote, denaturalization may also be a consequence of pleading guilty. So to the extent that Padilla is relevant, it seems like she was warned about that. We're not arguing that she wasn't warned. What we're arguing is that this is the kind of case where it doesn't have to be a criminal penalty for the Sixth and Fifth Amendments to attach. That was my answer to the court's question. But there are other cases aside from Padilla that talk about the consequences of not just deportation, but also denaturalization being so dire that I do think the Fifth and Sixth Amendments attach, even though it's not a defendant's sentence. So, Judge Pryor, getting back to your question about why the court can't look beyond the Shepard document. It seems to me if you look at Nijhuan, it would suggest that you can look beyond. Well, Nijhuan doesn't say it explicitly, but this court has explicitly said you can't, and that's in our reply brief. I know the department, the United States argued... We haven't said that in this context. I missed the first part of your question. I said we haven't said that in this court has said you can't look beyond. I said we haven't said that in this context. I don't think the court said it in the denaturalization context, but it has said it in... Most of these cases arise in other contexts because these cases are so rare, but in the Armed Career Criminal Act context, the court has said that even if you use what Nijhuan called the circumstance-specific approach, that doesn't give carte blanche to consider any document at all. It's only the circumstances. But that's for the purpose of considering what type of offense occurred, right? Yeah. You look at the Shepard documents to determine what type of offense was committed. That's correct, yes, or prior conviction and what kind of offense it was, right? Why isn't it a different question when that offense was committed? I don't know that we've spoken to it. I would take a step back and say I don't intend to concede that the circumstance-specific approach even applies, because as Nijhuan has written, it must be required by the wording of a statute. Searching the government's brief, they don't ever argue that the statute's language requires a circumstance-specific approach. So I don't even know that we get there. But if we do get there, this court's cases, the only cases I'm aware of that this court has said, here's where we're going to use the circumstance-specific approach. Every example I can think of, the court limited its review to the Shepard documents. I believe the... But not in the deportation context in Nijhuan. Not that I'm aware. I don't believe the court's spoken to it. But the court did say, and I believe Overstreet, that nothing in Nijhuan changed the Sneed line of cases, which is the line of cases that say we're limited to the Shepard documents. And I'm not aware of any other circuit that has said in a published decision that the court can look beyond the Shepard documents for... Why doesn't the factual proffer establish the date of the crime, when it says from about February 8th, 2005 through July 29th, 2008, Lopez and Pratt caused the submission of more than $7 this time period, which seems to refer back to a period which would make the crime within the correct time period. So, without parsing those sentences, the district court explicitly said that the factual proffer does not contain an admission of the date. I don't think that that line gets there, because the first sentence just admits that they were submitting claims to Medicaid, which they've never denied. To make Ms. Lopez part of the conspiracy, she needs to be admitting to submitting fraudulent claims to Medicare. And the period of the conspiracy doesn't neatly overlap the period of good moral character she needs to show, such that it's possible she joined the conspiracy after she naturalized, in which case she's not subject to denaturalization. Why would the proffer mention times when she submitted non-fraudulent claims as in its description of the facts? Because it's describing just the factual history. It starts with, it mentions that they set up a company that wasn't necessarily fraudulent. It mentioned that they submitted claims that wasn't necessarily fraudulent. And then it gets into the specifics of what she did to contribute to the conspiracy. And in those specifics, no dates are admitted, which is the kind of what the Supreme Court has called safe harbor plea agreement that is acknowledged and accepted, that defendants can negotiate with the Department of Justice to enter into plea agreements that don't subject them to deportation by leaving out certain language. Let me go back to something. I know you only have a few seconds left, but you'll be on the court's time at this point. The first question Chief Judge Pryor asked you, if we apply the categorical approach, would the least of the acts criminalized be the 1957 offense? Or do we have to look at both the 1956 offense and the 1957? I believe the 1957 is the least of the acts criminalized, but there's a second part to that. If we apply the categorical approach, the least of the acts culpable would be limited in time as well, because nothing in the plea agreement or the judgment says that her part in the conspiracy occurred before a certain specific date. But aside from the time issue, would you explain to me why we would look at 1957? I don't have the statute's language in front of me. I can file a 28-J letter with the court in response to that question. I'm not really talking about the statute's language. I think you have an argument that moral turpitude, but I'm asking you about the legal interpretation. If we view 1956H as divisible, could we then say that we have to look at the 1957 offense and consider whether that was a crime of moral turpitude? Yes. I think that's how the conspiracy statute works, that you admit to conspiracy, but then certainly you couldn't use the categorical approach to say no conspiracy ever involves moral turpitude because H by itself doesn't say moral turpitude. You look at the underlying offense, and one of them is 1957. Okay, but here she also pled guilty to the 1956A, whatever the subsections are, right? Yeah, A1B Act 1. Yeah. I mean, that's... Yeah, that's the problem. See, it seems to me if we couldn't tell, the 1957 looks to me like it's not a crime involving moral turpitude, but she admitted to doing both. Yeah. And the A1B1 clearly to me is a crime involving moral turpitude. I would say the judgment itself doesn't say, I mean, it says 1956H, but also this is work the district court didn't do. The district court didn't make any of those determinations, which might require fact-finding. It might require, I mean, at a minimum, I would say then remand would be the result. Yes. The problem, it seems to me that to the extent that the modified categorical approach is something we use when we can't tell which crime the defendant pleaded guilty to. So, we look at the least culpable conduct. But the problem, it seems to me, that your client has here is that she admitted to both A1B1 and 1957, and one of those is a crime involving moral turpitude. Okay. You've saved four minutes for rebuttal. Let's hear from Mr. Liggett. Thank you very much. Good morning, Your Honor. Excuse me. Good morning, Your Honors. If I may please the court, Troy Liggett for the United States. The court should affirm the district court's judgment of Mrs. Lopez's naturalization because she conspired to launder millions of dollars before she naturalized, and she blatantly concealed it from immigration officials. Her crime involved moral turpitude because it categorically and inherently concealed or promoted unlawful activity. If all we were dealing with was an underlying substantive offense of 1957, it would seem to me that you would have a problem because that wouldn't be a crime involving moral turpitude. The government disagrees with that because, as we argued in our brief, all of the provisions in 1956 and 1957 involve concealment or disruption, detriment to the government. In Itani, this court discussed a fraud doesn't have to necessarily have a specific intent of fraud. It can also involve concealment, and it's the government's least involved concealment. 1957 is knowingly engaging in a monetary transaction and criminally derived property of a great value greater than $10,000 and derived from specified unlawful activity. I don't see where any element of that involves deceit or anything else that necessarily would make it a crime involving moral turpitude. The provision involves moral turpitude simply by the fact that it involves the proceeds of illegal activity. It doesn't involve concealment, deceit, the sort of things that we've said would make it a crime involving moral turpitude. It does involve disruption of government business. In the failure to report, it involves the affirmative disruption of the government's ability to track that money. Well, what authority says that affirmative disruption is enough to constitute a crime of moral turpitude? It's like we've set a higher standard than that. For example, in Zarate, where we distinguish between deceit and fraudulent statements. Right. Zarate goes into that. There's a difference. I think Zarate differentiates when it talks about matter of flores between general deceit to a person in the community and deceit to the government. 1957 involves failure to report something to the government. I know in Zarate quoted to Ahmed, which is a case about using a fraudulent social security card. In Ahmed, which was a second circuit decision, the second circuit decided it didn't involve moral turpitude because the statute specifically said you're using the fraudulent social security card for any purpose. You can be using it to gain employment, doing lots of things. 1957 says you're specifically deceiving the government by not reporting. I don't see that in the statute, but I'm not sure it matters because it seems to me that Ms. Lopez admitted to committing both 1957 and 56A1B1 and A1B1 would be a crime involving moral turpitude, right? You're correct. It involves concealing the unlawful. If she admitted to doing both then and one of those is a crime involving moral turpitude, then we don't have a problem. Absolutely, your honor. There is no problem. We didn't delve into our brief. Was it clear to me that from your brief that you were what your position is on Costello, but it seemed me that the Costello decision controls the question about the statute of limitations, whether the statute of limitation applies? The Costello decision by the Supreme Court says that clearly Congress didn't put a limit. There are several circuit courts that have talked about Costello. I don't know that any of them have said it's controlling only because it doesn't take that extra step, but I agree it could be controlling here. It could be controlling. That's very helpful. I'm sorry, your honor. Is the government not taking a position on whether it's controlling? The government hasn't taken a position on whether Costello is controlling, but it has led other circuits to that decision. If we were to conclude that the district court abused its discretion in taking judicial notice of the DMV record, do you think that the factual proffer by itself is enough to establish that Lopez committed the crime within the relevant statutory period? Yes, your honor. The factual proffer talks about her setting up the business in 2004, and it talks about establishing the money laundering during those specific dates. As the district court walked through, there are several dates in the factual proffer that are during the statutory period. Taking the factual proffer as a whole, the court determined that she conspired to commit money laundering. What's your response to Ms. Lopez's counsel's contention that none of the dates that are in there specifically address illegal conduct as opposed to when she started the business, say? And just so I understand the question, none of the dates in the factual proffer? I mean, I think you heard his response to the question about whether the dates from the factual proffer could be evidence of the time period of her crime. And he said that although it included dates, it didn't necessarily. My understanding was that his position was that not all of those dates reflected the timing of illegal activity. They were expressing the timing of perhaps things that surrounded the illegal activity might be one way of saying it. Let's say if I started a business in the year 2000 and ran it completely clean for five years, and then in 2005, I started committing fraud. And I committed fraud from 2005 to 2010. I think, and he can correct me if I'm wrong, but I think that he was saying that this proffer was saying Brett Grant ran a business from 2000 to 2010, right? When really the fraudulent conduct took place from 2005 to 2010. Do you understand what I'm saying? Yeah. Yes. She started the business in 2004, and she in the factual proffer discusses filing fraudulent health care claims starting in 2005, and then she naturalized in 2007. So it's our thought that when she started filing fraudulent claims is a part of the factual proffer, and it happened before she naturalized. And so that shows that she committed the offense before. Thank you. I'll note on taking judicial notice, the government contends, as it said in his briefs, that the district court didn't violate how it may consider evidence in a judgment for motion on the pleadings. But the court in the questioning earlier is correct that the date of the crime isn't an element. And therefore, that's the basic reason why it was okay for the court to look outside of the Shepard documents. Your Honor, I'll note for the record a helpful case about taking, looking outside the Shepard documents, and that would be the Supreme Court case Pareda, P-E-R-E-I-D-A v. Wilkinson, 141 Supreme Court 754, 2021. I noticed after we filed our brief that is really a clear case on how the government may, or the court, I should say, can look outside the Shepard documents in determining any factual issue other than exactly which crime the individual committed. Here, the date doesn't have any Sixth Amendment concerns. Indeed, Pareda said that there are no Sixth Amendment concerns in immigration cases. Nijuan, which you discussed, was a statutory interpretation case involving aggravated felonies, and specifically the $10,000 threshold in that statute. Here, you're looking, you're interpreting 1101F3, which involves the good moral character immigration statute. And that statute says that there needs to be a determination that the crime occurred during the statutory period. That's where you're applying, that's where you use the DMV record to determine that she committed her crime during the statutory period when you're looking at the application of 1101 and the CIMT provision of good moral character. So, just to return quickly to my question, I'm looking at the exact date. So, I want to make sure that I get your response to what I think that opposing counsel said. So, this says from about February 8, 2005 through July 29, 2008, defendant caused the submission of more than $7 million, but less than $20 million worth of claims to Medicare on behalf of Medline. And then the next paragraph says during this time period, defendant was aware essentially that the claims were false, right? So, I think, and perhaps counsel can correct me if I misunderstood, but I think what he was saying was that during this time period doesn't necessarily mean during the entire time period. It could mean some later subset of that time period. What's your response to that argument? Should we consider those coextensive or is that reading too much into it? That phrase specifically indicates when they were committing the healthcare fraud, and the healthcare fraud is an underlying provision of the money laundering conspiracy provision because it's illegal proceeds from that that you then launder. The government contends that the factual proffer taken as a whole shows when the entire crime was committed and puts the money laundering statute in that time period. However, there's no doubt with the DMV record, which the court properly took judicial notice of, could take judicial notice of, and consider the outside the Shepard documents clearly establishes that was within the statutory period. Thank you. Your honors, if there are no more questions, I will just conclude that the government contends that her crime involved moral turpitude. She committed it clearly before she naturalized, and therefore, the court should remedy the situation by affirming the district court's decision. Thank you. Thank you, Mr. Leggett. Mr. Hoppe, you saved four minutes. If I can just start by going back to the factual proffer to fully explain what our position is. The factual proffer was deeply negotiated. It still has lines crossed through. You read the sentencing transcript. They were still trying to figure out the wording the day of sentencing or the day of the plea hearing, and so it's carefully worded, and that paragraph that the court reference says gives dates that the defendants, Ms. Lopez and her husband, Mr. Pratt, caused the submission of more than $7 million but less than $20 million worth of claims. It doesn't say all of those claims were fraudulent, and my understanding is this is a clean business that starts to become dirty, and the next paragraph explains how. The during this time period doesn't refer to anything that Ms. Lopez herself did. It says during this time period, defendant was aware that Pratt was submitting and causing submission of several million dollars in false fraudulent Medicare claims. Well, being aware that your spouse is committing a crime is not conspiracy to commit money laundering. What's missing from this language, and I think it's missing intentionally, is when the defendant moved from the position of just knowing that her spouse was committing a crime to actively taking part, to joining the conspiracy, and because that period doesn't naturally or neatly overlap the good moral character period, this case is a lot like the district court case in our note, which is cited in our briefs. In that case, the district court said, because the plea agreement does not specifically say when she joined the conspiracy, one can't really tell if she should be denaturalized for this. I would remind the court that the standard here is clear, unequivocal, and convincing evidence, so if the government's argument is to look at the entirety of the document and sort of get a sense of whether she admitted to the specific date, that's really not the standard, and I think the district court was right when it said the plea agreement did not admit to the date because it doesn't, and if it's not in the plea agreement or in the factual proffer, our argument would be that that ends the inquiry. There is no world in which the Department of Justice can come up with new evidence 10 years after you're convicted and then submit it as evidence of your guilt of a crime you got convicted of 10 years ago. I don't think any of us think that's quite what they're doing, right? Because as you already agreed, the date is not an element of the crime, right? So the new evidence shows the date, not whether she committed the crime. No, I agree, absolutely, but I would push back to say it wasn't an element in Sneed either. In the Sneed case, the person was convicted, the data commission wasn't an element, and the district court had used a police report, and the court said we can't look at police reports to say they're not Shepard documents. That is essentially what's happening here. This is, rather than a police report, it's a DMV record, but it too is not a Shepard document, and because even though the date isn't an element, the courts across the country find crimes to be crimes involving moral turpitude, denaturalize people, find people deportable all the time. The Supreme Court has just set a limit, and the limit is the Shepard documents. We're not aware of any court that has gone beyond the Shepard documents in a published opinion, either in the deportation context, or in the denaturalization. Nijuan does it. I'm sorry? Nijuan's a deportation context. It goes beyond the Shepard documents. I don't believe it did. It went just to the plea transcript. I don't believe Nijuan considered any document outside of the Shepard context, nor did I believe say that you can, and the Overstreet decision, which I'll have to go back and look at my reply brief, but I believe it's the starting with Snead. So in our view, even after Nijuan, Shepard is the limit, and the court violated that here. Thank you. Thank you. We'll move to the next case.